## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE | ) |
| | ) |
| RAYMOND PROFESSIONAL GROUP, INC., et al., | ) Bankruptcy No. 06 B 16748 |
| Debtors. | ) (Jointly Administered) |
| RAYMOND PROFESSIONAL GROUP, INC., | ) |
| Plaintiff, | ) |
| RAYMOND MANAGEMENT SERVICES, | ) |
| INC. n/k/a RAYMOND PROFESSIONAL | ) |
| GROUP–DESIGN/BUILD, INC., | ) |
| Co-Plaintiff to Count VI | ) |
| v. | ) Adversary No. 07 A. 00639 |
| WILLIAM A. POPE COMPANY, | ) |
| Defendant. | ) |
| WILLIAM A. POPE COMPANY, | ) |
| Counter-Plaintiff as to Count VI | ) |
| v. | ) |
| RAYMOND PROFESSIONAL GROUP, INC. | ) |
| and RAYMOND MANAGEMENT SERVICES, | ) |
| INC., n/k/a RAYMOND PROFESSIONAL | ) |
| GROUP–DESIGN/BUILD, INC., | ) |
| Counter-Defendants. | ) |
| NATIONAL FIRE INSURANCE COMPANY | ) |
| OF HARTFORD, a Connecticut Corporation | ) |
| Intervening Plaintiff | ) |
| v. | ) |
| RAYMOND PROFESSIONAL GROUP, INC., | ) |
| RAYMOND PROFESSIONAL GROUP– | ) |
| DESIGN/BUILD, INC., and | ) |
| WILLIAM A. POPE COMPANY, | ) |
| Intervening Defendants. | ) |

**MEMORANDUM OPINION ON (1) WILLIAM A. POPE COMPANY'S MOTION TO DISQUALIFY SCHIFF HARDIN LLP AS COUNSEL FOR DEBTORS, FOR DENIAL OF FEES, AND FOR APPOINTMENT OF A TRUSTEE [Bankr. Docket No. 223]; (2) MOTION OF RAYMOND PROFESSIONAL GROUP, INC. TO VOLUNTARILY DISMISS COUNT I WITHOUT PREJUDICE [Adversary Docket No. 528]; AND (3) DEBTORS' MOTION FOR SUBSTANTIVE CONSOLIDATION OF THEIR ESTATES [Bankr. Docket No. 248]**

This Opinion addresses three motions that are legally and factually related: (1) William

A. Pope Company's Motion to Disqualify Schiff Hardin LLP ("Schiff") as Counsel for Debtors,

for Denial of Fees, and for Appointment of a Trustee [Bankr. Docket No. 223]; (2) Raymond

Professional Group, Inc.'s Motion to Voluntarily Dismiss Adversary Count I Without Prejudice

[Adversary Docket No. 528]; and (3) the Debtors' Motion for Substantive Consolidation of Their

Estates [Bankr. Docket No. 248]. These motions relate to a long-running and hotly contested

dispute between William A. Pope Company ("Pope") and two of the debtors in this jointly

administered bankruptcy case, Raymond Professional Group, Inc. ("RPG") and Raymond

Management Services, Inc. n/k/a Raymond Professional Group–Design/Build, Inc. ("RMS"),

over ownership of certain funds.

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334, pursuant to 28 U.S.C. § 157. It is

referred here by District Court Operating Procedure 15(a) of the United States District Court for

the Northern District of Illinois. Venue lies under 28 U.S.C. §§ 1408 and 1409. These matters

constitute core proceedings under 28 U.S.C. § 157(b)(2)(A).

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Prebankruptcy Relationship Between Pope and the Debtors

The dispute between Pope and two of the Debtors[1] originated on September 12, 2000,

---

[1] RPG is asserted to be the 100 percent shareholder of RMS. Additional wholly owned
subsidiaries of RPG include debtors Raymond Professional Group–A/E, Inc. (bankruptcy case
no. 06-16749), Raymond Professional Group–Government, Inc. (bankruptcy case no. 06-16750),
and Raymond International, Inc. (bankruptcy case no. 06-16754). Raymond Professional
Group–Puerto Rico Engineering PSC (bankruptcy case no. 06-16755) is an affiliate of RPG
through common ownership. (Collectively with RPG and RMS, the "Debtors".) An Order
providing for joint administration of the bankruptcy cases has been entered.

when RMS entered into a contract with AES Medina Valley Cogen, LLC ("AES") to provide

engineering, procurement, construction, and start-up for a cogeneration power facility (the

"Project"). *In re Raymond Prof'l Group, Inc.*, 408 B.R. 711, 722 (Bankr. N.D. Ill. 2009)

(Findings of Fact and Conclusions of Law After Trial on Count VI). In January 2001, RMS

subcontracted part of the Project to Pope. *Id.* at 723. RPG was not a party to the original contract

nor the subcontract. *Id.* As part of their agreement, RMS and Pope set up an account (the

"Account") to facilitate the payment of Project funds. *Id.*

A number of disputes arose between RMS and Pope, and the relationship between them

deteriorated as the Project progressed. *Id.* at 724–26. On February 4, 2003, AES, the owner of the

Project, caused a final payment of $2.5 million to be deposited directly into the Account in return

for lien releases from RMS and Pope. *Id.* at 726. As of that date, the Account was subject under

the Pope/RMS contract to arbitration of disputes between RMS and Pope and to determination of

their claims and trust rights under the Illinois Mechanics Lien Act. *In re Raymond Prof'l Group,*

*Inc.*, 410 B.R. 813, 815 (Bankr. N.D. Ill. 2009) (Amendment to Findings of Fact and Conclusions

of Law). Pope and RMS proceeded to arbitrate their disputes, and Schiff represented RMS in

proceedings before the arbitration panel. *In re Raymond Prof'l Group*, 408 B.R. at 726, 750.

RPG was not a party to the arbitration proceeding. On November 30, 2006, the arbitration panel

rejected RMS's claims and awarded Pope $3,634,714.00, to be paid out of the Account to the

extent it was large enough to cover the award (the "Arbitration Award" or the "Award" ). *Id.* at

726. However, the Award did not determine ownership of the Account itself. *In re Raymond*

*Prof'l Group, Inc.*, 397 B.R. 414 (Bankr. N.D. Ill. 2008), *supplemented by In re Raymond Prof'l*

*Group, Inc.*, 400 B.R. 621 (Bankr. N.D. Ill. 2008).

**B. The Debtors' Bankruptcies and Subsequent Litigation**

On December 18, 2006, RPG, RMS, and the other related debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors scheduled their assets and liabilities as follows:

| Debtor | Assets | Liabilities |
|---|---|---|
| Raymond Professional Group, Inc. (RPG) | $3,303,010.96 | $1,214,489.54 |
| Raymond Professional Group–Design/Build, Inc. (RMS) | $0.00 | $3,656,329.10 |
| Raymond Professional Group–A/E, Inc. | $6,816.00 | $269.97 |
| Raymond Professional Group–Government, Inc. | $248,832.00 | $3,798.00 |
| Raymond International, Inc. | $20,000.00 | $0.00 |
| Raymond Professional Group–Puerto Rico Engineering PSC | $124,881.00 | $57,733.94 |

Prior to the bankruptcy filings, Pope and RMS had agreed to joint control of the Account by requiring approval from a representative of each before any withdrawal was permitted. Despite that agreement, and although RPG had no contractual relationship with AES or Pope, RPG scheduled the Account in its bankruptcy case as its asset. That Account, then amounting to $3,125,892.91, was largest single asset of any of the Debtors. Pope was scheduled as a creditor of RMS, holding the largest single claim against any of the Debtors. RMS's creditor schedules also listed unliquidated claims of unknown value for "intercompany charges" by other debtors, including RPG, as well as three other creditors with claims totaling $21,614.70. RPG listed 154 unsecured priority creditors and 177 unsecured nonpriority creditors. RPG attributed an unliquidated claim of unknown value for "intercompany charges" to each of the other debtors, including RMS.

Counsel for the Debtors thereby treated Pope as having a claim only against RMS which

-4-

had no assets, and treated the Account as belonging to RPG which had no contractual claim to

that fund. Although the Account was subject prebankruptcy to joint control by representatives of

RMS and Pope, the Debtors somehow had the Account transferred by the depositary bank into a

Debtor-in-Possession Account of RPG without any approval by Pope. That unauthorized transfer

has since been reversed by court order, and the money was transferred into an account under

court supervision at a new depositary bank.

On December 18, 2006, the Debtors moved to employ Schiff as bankruptcy counsel for

all the related debtors [Bankr. Docket No. 5]. In its Rule 2014 Affidavit, which was attached to

the Motion to Employ, Schiff did not disclose its prior representation of RMS in the arbitration

proceeding. At the time, however, there was no objection and Schiff was approved as bankruptcy

counsel for all the Debtors on January 3, 2007 [Bankr. Docket No. 24].

On February 27, 2007, RMS filed an Adversary Complaint (Adversary no. 07-137)

against Pope seeking to vacate the Arbitration Award. In that Adversary, Pope sought to confirm

the Award and moved for summary judgment. Pope's motion was granted and the Award in

favor of Pope was confirmed on December 23, 2008. No appeal was taken from that decision.

On July 17, 2007, RPG filed an Adversary Complaint (Adversary no. 07-639) against

Pope contending that RPG owned the Account. RMS was not a party to the Complaint, which

originally contained five counts seeking: a declaration determining that RPG owned the Account

(Count I); pursuant to 11 U.S.C. § 544(a), to avoid any trust found to have been imposed on the

Account by the Award (Count II); to avoid the Award as a preference under 11 U.S.C. § 547(b)

(Count III); to avoid the Award as a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B) (Count

IV); and to disallow Pope's claim for the amount of the Award under 11 U.S.C. § 502(d) (Count

V). In its Amended Answer to the Complaint [Adversary Docket No. 22], filed on August 10,

2007, Pope asserted a counterclaim seeking, among other things, a declaration that funds in the

Account were held in trust for its benefit pursuant to the Illinois Mechanics Lien Act.

On December 21, 2007, just over one year after the bankruptcy cases were filed, Pope

filed a Motion to Disqualify the Schiff firm [Bankr. Docket No. 223]. Pope primarily complained

that Schiff had asserted RPG's claim of ownership to the Account in the Adversary Complaint,

despite RMS's competing claim of ownership to that same Account, a claim that Schiff had

asserted on behalf of RMS in the arbitration and separate Adversary proceeding over

confirmation of the Award. Pope asserted that this was a disqualifying conflict that prejudiced

Pope as a creditor of RMS. In that same motion, Pope also sought denial of Schiff's fees for

failure to disclose properly its connections with the Debtors, as well as the appointment of a

Chapter 11 trustee.

Shortly before Pope filed the Motion to Disqualify, Schiff filed a Supplemental Affidavit

[Bankr. Docket No. 214] disclosing its prior representation of RMS in the arbitration proceeding.

Shortly after Pope filed its Motion, the Debtors filed their Motion for Substantive Consolidation

[Bankr. Docket No. 248], seeking substantive consolidation of all of the Debtors' bankruptcy

estates. The Debtors also filed a Response to the Motion to Disqualify [Bankr. Docket No. 250],

to which Pope replied on January 24, 2008 [Bankr. Docket No. 257]. In an effort to facilitate

judgment on merits of the dispute between Pope and the Debtors, RPG filed an Amended

Adversary Complaint [Adversary Docket No. 114] on March 13, 2008, to add new Count VI, in

which RPG sought a declaration that Pope did not own the Account. RMS was later joined in

Count VI as a necessary party upon Pope's motion. (Pope's Mot. to Conform the Pleadings to the

Evidence and to Join RMS as a Necessary Party [Adversary Docket No. 325]; Agreed Order Joining RMS [Adversary Docket No. 334].) At that point, both RMS and RPG were united in Count VI in their contention that Pope did not own the Account against Pope's contention that it did.

After several months of pretrial litigation in pending Adversary proceedings, Pope filed in the bankruptcy case a Motion to File a Supplemental Brief [Bankr. Docket No. 305], which advanced a new ground to disqualify Schiff based on a check and other documents purportedly showing that Schiff had previously represented Pope. Based on that new ground, Pope later filed a Motion to Renew its Motion to Disqualify [Bankr. Docket No. 350; Adversary Docket No. 232]. The Motion to File a Supplemental Brief was granted on December 4, 2008. Following hearing on the new issue asserted, an Order [Adversary Docket No. 342] was entered denying Pope's Motion to Disqualify insofar as it was based on Schiff's purported prior representation of Pope. The remaining grounds of Pope's Motion to Disqualify remain pending and are the subject of this Opinion.

Count VI was later tried, and a Final Judgment [Adversary Docket No. 430] was entered on August 14, 2009, declaring Pope the sole owner of the Account, against the claims of RMS and RPG. However, this did not end the litigation. After the trial, RPG counsel expressed the desire to pursue remaining counts of the original Complaint, and Pope again raised the disqualification issue. In response, Debtors' counsel filed a Motion to Join RMS as Co-Plaintiff in Counts II through V [Adversary Docket No. 482]. However, Debtors' counsel clearly and explicitly indicated that RMS would not join as a party to Count I. The motion to join RMS in Counts II through V was granted on September 23, 2009 [Adversary Docket No. 500]. Seeking to

-7-

defer any need to rule on Count I issues until appeals of other issues are decided, RPG then filed

a Motion to Voluntarily Dismiss Count I Without Prejudice [Adversary Docket No. 528].

## DISCUSSION

## I. MOTION TO DISQUALIFY

A request to disqualify counsel for a debtor should not be granted or denied without most

serious consideration. Denying a valid motion would allow a professional to represent a

conflicting interest and thereby prejudice creditors and undermine an important principle of the

law pertaining to lawyer representation. Granting the motion wrongfully would deny the debtor

choice of counsel and would impose great expense on it. Granting the motion after counsel has

performed much work, as in this case, also risks the possible loss of fees to the disqualified

counsel.

Pope seeks three separate forms of relief in its Motion to Disqualify. First, it seeks

disqualification of Schiff as counsel for all of the debtors because Schiff is not a disinterested

person as required under 11 U.S.C. § 327. Second, it seeks disallowance of Schiff's fees and

disqualification because Schiff did not disclose its prior representation of RMS in its original

Rule 2014 Affidavit. Third, Pope seeks appointment of a Chapter 11 trustee because of the

Debtors' purported dishonesty.

In addition to contesting each of Pope's requests for relief on the merits, the Debtors

argue that Pope waived the disqualification issue by not timely raising it.

## A. Schiff Hardin LLP and Its Lawyers Have an Actual Conflict as to Count I of the Complaint and the Motion for Substantive Consolidation

A Chapter 11 debtor-in-possession may employ as attorneys only those "that do not hold

-8-

or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. §§

327(a), 1107(a). *See In re Midway Indus. Contractors* and cases cited therein, 272 B.R. 651, 661

(Bankr. N.D. Ill. 2001) (Sonderby, J.). Under the Bankruptcy Code, the term *disinterested person*

means a person that:

> (A)    is not a creditor, an equity security holder, or an insider;
>
> (B)    is not and was not, within 2 years before the date of the filing of
>        the petition, a director, officer, or employee of the debtor; and
>
> (C)    does not have an interest materially adverse to the interest of the
>        estate or of any class of creditors or equity security holders, by
>        reason of any direct or indirect relationship to, connection with, or
>        interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14). Although the Bankruptcy Code does not define what it means to hold an

"adverse interest," opinions have defined it as: (1) possession or assertion of any economic

interest that would tend to lessen the value of the bankruptcy estate or that would create either an

actual or potential dispute in which the estate is a rival claimant; or (2) possession of a

predisposition under circumstances that render such a bias against the estate. *In re Crivello*, 134

F.3d 831, 835 (7th Cir. 1998). Attorneys represent an adverse interest when they serve as an

attorney for any party holding an adverse interest. *In re Envirodyne Indus.*, 150 B.R. 1008, 1017

(Bankr. N.D. Ill. 1993) (Schwartz, C.J.). Attorneys representing conflicting interests may be

disqualified and may not be approved to represent a debtor-in-possession in bankruptcy. *See* 11

U.S.C. § 327. These limitations ensure "'that all professionals appointed pursuant to section

327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of

their fiduciary responsibilities.'" *In re Crivello*, 134 F.3d at 836 (*quoting Rome v. Braunstein*, 19

F.3d 54, 58 (1st Cir. 1994)). Because of the impact these limitations have on the integrity of the

bankruptcy system, they are strictly enforced. *See In re DeVlieg, Inc.*, 174 B.R. 497, 502 (N.D.

Ill. 1994) (Reinhard, J.).

A lawyer is not disqualified from employment by the debtor-in-possession under § 327(a)

solely because that attorney represented the debtor prior to bankruptcy. 11 U.S.C. § 1107(b). Nor

is a lawyer disqualified solely because that lawyer represents a creditor.[2] *Id.* § 327(c). However, a

bankruptcy judge should disapprove employment of an attorney who represents a creditor "if

there is an *actual* conflict of interest." *Id.* (emphasis added). A conflict is "actual" when "the

professional serves two presently competing and adverse interests." *In re Am. Printers &*

*Lithographers, Inc.*, 148 B.R. 862, 866 (Bankr. N.D. Ill. 1992) (Schmetterer, J.). In contrast, a

conflict is merely "potential" when "the competition does not presently exist, but may become

active if certain contingencies arise." *Id.* Some opinions have rejected the distinction between

actual and potential conflicts, finding that "potential conflict" is a contradiction in words. *See,*

*e.g., In re Grabill Corp.*, 113 B.R. 966, 970–71 (Bankr. N.D. Ill. 1990) (Squires, J.). However,

rejecting this distinction would be contrary to the better view disfavoring bright-line *per se* rules

of disqualification. *In re Am. Printers & Lithographers*, 148 B.R. at 866 (*citing In re Harold &*

---

[2] RMS is a creditor of RPG. A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). For bankruptcy purposes, the term *claim* is broadly defined: it is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.* § 101(5)(A). In this case, a decision was made by the Schiff firm attorneys before the bankruptcy cases were filed to list the Account as property of RPG rather than RMS, despite RMS's claim to the Account. That decision gave rise to a claim by RMS against RPG, making RMS a creditor of RPG in bankruptcy for the claim by it against the Account. However, RPG only listed RMS as a creditor on its Schedule F for unliquidated "intercompany charges" of unknown value, and the Schiff lawyers did not schedule the obvious claim of RMS against the Account or against RPG, which took possession of the Account when the bankruptcies were filed.

*Williams Dev. Co.*, 977 F.2d 906, 910 (4th Cir. 1992); *In re BH & P, Inc.*, 949 F.2d 1300,

1315–16 (3d Cir. 1991)).

It has been said that while a bankruptcy judge can disapprove of the employment of

professionals with a potential conflict, there are two possible situations where that would not be a

proper decision: (1) "'large cases where every competent professional in a particular field is

already employed by a creditor or a party in interest'" and (2) "'where the possibility that the

potential conflict will become actual is remote, and the reasons for employing the professional in

question are particularly compelling.'" *Id.* at 866–67; *see also In re BH & P*, 949 F.2d at 1316. In

many Chapter 11 cases, the creditors raise no objection to use of one counsel for all related

debtors, thereby making an implicit decision that cost-effective representation by one counsel in

those cases does not materially hurt creditor interests. However, the case is much different where,

as here, there is an attempt by one debtor to divert assets from another debtor to the prejudice of

an objecting creditor.

After employment of a professional has been approved, that professional must remain

disinterested and may not hold or represent interests adverse to the estate while so employed. 11

U.S.C. § 328(c); *In re Diamond Mortgage Corp. of Ill.*, 135 B.R. 78, 93 (Bankr. N.D. Ill. 1990)

(Ginsberg, J.). Section 328(c) of the Bankruptcy Code "provides a penalty for professionals who

fail to satisfy § 327(a)'s dual requirements." *In re Crivello*, 134 F.3d at 836, 839. Under § 328(c),

a bankruptcy judge has discretion to deny compensation to a previously approved professional

later found to be disinterested or to hold or represent an adverse interest. 11 U.S.C. § 328(c); *In

re Crivello*, 134 F.3d at 836–38. A bankruptcy judge may also remove such a professional on a

prospective basis. *In re Diamond Mortgage Corp.*, 135 B.R. at 89 n.7; *In re Al Gelato Cont'l*

-11-

*Desserts, Inc.*, 99 B.R. 404, 409 (Bankr. N.D. Ill. 1989) (Wedoff, J.) (removing law firm from employment by only one of three debtors-in-possession because firm represented an interest adverse to that debtor-in-possession only).

An attorney who is allowed to represent multiple debtors in large Chapter 11 cases must be especially careful not to violate these ongoing employment requirements by preferring one debtor over another. Each debtor-in-possession owes a fiduciary duty to its creditors. *In re Scott*, 172 F.3d 959, 967 (7th Cir. 1999) (*citing In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)). The nature of this duty "is analogous to the corporate fiduciary duties owed by directors to shareholders under state law and includes the duties of care and loyalty." *In re Bellevue Place Assocs.*, 171 B.R. 615, 624 (Bankr. N.D. Ill. 1994) (Schmetterer, J.) (*citing In re Schipper*, 933 F.2d at 515). Thus, the debtor-in-possession is proscribed from acting solely in its self-interest to the exclusion of the other interests that it is obligated to protect. *In re Bellevue Place Assocs.*, 171 B.R. at 624. Fiduciary duties also bind attorneys and other professionals employed by the debtor-in-possession. *Id.* at 626. These professionals owe their allegiances to the debtor-in-possession and its creditors. *Id.* Thus, when an attorney representing multiple debtors-in-possession works to benefit one debtor's estate or creditors at the expense of another debtor's estate or creditors, the attorney risks breaching its fiduciary duties to the forsaken debtor-in-possession. In such a situation, the attorney would represent an interest—that of the preferred debtor-in-possession—adverse to the forsaken debtor-in-possession and its creditors, a disqualifying conflict. *See id.* at 626–27.

In this case, Pope seeks removal of Schiff as counsel for all of the Debtors. In support, Pope argues in particular that Schiff has an actual conflict of interest because the law firm has

-12-

asserted RPG's claim of ownership of the Account to the detriment of RMS and RMS's creditors. However, Schiff did not do this in all Counts of the litigation. The only count of the Complaint that has been decided is Count VI, in which RPG and RMS joined forces in an effort to defeat Pope's claim to the Account. Both debtors thereby sought to retain the funds in the Account for their joint benefit and possible determination later as to which estate the Account belongs in. Because RPG and RMS jointly sought relief, any conflict between them remained merely potential. If they had defeated Pope as to ownership, Pope would have been able to complain of conflict as it affected the issue of which debtor should obtain the Account. Ultimately, however, Pope prevailed on Count VI. (*See generally* Final Order of Judgement [Adversary Docket No. 430].) Since then, RMS has also joined RPG in seeking relief under Counts II through V of the Complaint. Once again, both debtors are seeking joint relief against Pope in those Counts, and no actual conflict exists between RMS and RPG. Many of the additional issues raised by Pope also do not demonstrate a conflict, as discussed below.

Schiff counsel clearly accepted the risk of ultimate loss on the conflict issue when that issue was originally asserted, but opposed disqualification and continued their role in the pending litigation, notably in Count I and the motion to consolidate the several bankruptcy estates. It would not have been appropriate to advance ruling on that issue ahead of the litigation on Account ownership in which there was no actual conflict presented. Moreover, the Schiff firm was involved in the dispute with Pope from the beginning, and to have disqualified the firm in Count VI because of a potential conflict in Count I although there was no actual conflict in Count VI would have likely barred both RMS and RPG from having knowledgeable counsel available to litigate the critical issues posed in Count VI.

-13-

Apart from litigation of Counts II, III, IV, and V, in which the Schiff lawyers do not now have a conflict of interest (and which have since gone to trial and await final written argument and ruling), two matters remain pending in which Schiff lawyers do have an actual disqualifying conflict. First is RPG's pursuit of relief under Count I of the Complaint and the unwillingness of the Schiff lawyers to bring RMS into that count. In Count I, RPG persists in its attempt to claim the Account for itself on a theory asserted only on its behalf. Count I seeks a declaration that the Account in which designated signatories for Pope and RMS had withdrawal authority was a joint account that is actually owned by RPG. The basis for that theory is not pleaded but appears to relate to the assertion that RPG owns 100% of RMS stock and therefore owns moneys that may be due to RMS under its contract with Pope, a theory not advanced in other counts.

RMS has not been joined in Count I even though its interests and those of its creditors are clearly implicated. Indeed, RMS appears to be a necessary party to Count I since the Account came out of contracts between RMS and Pope. Fed. R. Civ. P. 19 (made applicable in this proceeding by Fed. R. Bankr. P. 7019) (person must be joined if (1) the court cannot accord complete relief among existing parties in that person's absence or (2) that person claims an interest in the subject of the litigation and disposing of the action without that person's participation would impair or impede that person's ability to protect that interest).

Schiff still purports to represent both debtors. Schiff attorneys have filed a Notice of Appeal from the Count VI Judgment against RMS and RPG, but still assert that "there is no good faith argument that RMS owns the [Account]" and, therefore, their arguing that the Account belongs to RPG does not create any conflict. (Response 15.) It has already been found that the only parties that ever had a claim to the Account were Pope and RMS and that neither RMS nor

-14-

RPG own it. *See generally In re Raymond Prof'l Group, Inc.*, 408 B.R. 711, 738–41 (Bankr.

N.D. Ill. 2009), *supplemented by In re Raymond Prof'l Group, Inc.*, 410 B.R. 813, 813–15

(Bankr. N.D. Ill. 2009). By continuing to assert this claim of ownership on behalf on RPG, not

only does Schiff disregard the overwhelming evidence and ruling to the contrary in Count VI, but

the firm is also forsaking its fiduciary duty to RMS and RMS's creditors, which it seeks to

vindicate in its appeal in Count VI on behalf of both RPG and RMS. In Count I, it is representing

only the interests of RPG and its creditors, which are obviously adverse to the estate and

creditors of RMS.

By continuing in Count I to assert RPG's ownership interest in the Account, the potential

conflict has become an actual conflict. Schiff must be removed as counsel for RMS in that

Count, so as to require independent counsel for RMS who can decide whether to join or oppose

Count I.

The second issue in which Schiff has an actual, disqualifying conflict is its presentation of

the Debtors' Motion for Substantive Consolidation. On its schedules, RMS listed Pope as an

unsecured nonpriority creditor with a $3,634,714.00 claim. Of the six other creditors that RMS

scheduled, three are other debtors with unliquidated claims of unknown value. The remaining

three creditors have claims totaling $21,615.10. Although the Account is scheduled as an asset of

RPG, it has already been determined by the finding against RPG in Count VI that RMS was the

only debtor ever to have a claim to the Account and that Pope's claim was victorious therein over

both RMS and RPG. The Account, which RPG scheduled as its debtor-in-possession asset then

amounting to $3,125,892.91, should have been scheduled as an asset claimed by RMS, against

which Pope as an RMS creditor stood to recover almost all of its claim if Pope had lost Count VI

and did not own the Account.

If, however, the estates are substantively consolidated and the Judgment for Pope on Count VI is overturned, the potential recovery by Pope as creditor of the consolidated estates would be greatly reduced. Based on schedules filed, a consolidated estate would have assets of $3,703,539.96 and liabilities of $4,932,621.53. While the available assets would increase slightly, the competing liabilities would increase drastically. This clearly would be adverse to interests of Pope and any other creditors of RMS. Therefore, Schiff has violated its fiduciary duties to RMS's estate and creditors by bringing and persisting in the Motion for Substantive Consolidation, purportedly filed on behalf of all the debtors. For these and other reasons discussed in Part III below, the Motion for Substantive Consolidation will be denied, and Schiff may not represent RMS in bringing any motion for substantive consolidation.

In addition to being removed as counsel for RMS, Schiff must not profit from its conflicting representation of RMS and RPG. *See* 11 U.S.C. § 328(c). Therefore, Schiff's fees will be disallowed by separate order to the extent they seek recovery for time spent working on Count I, Pope's Motion to Disqualify, and the Debtors' Motion for Substantive Consolidation. If any fees have already been paid relating to those subjects, those fees must be disgorged.

**B. Schiff Is Not Disqualified for Failure to Disclose its Prior Representation of RMS in its Original Rule 2014 Affidavit**

A debtor-in-possession seeking to employ a person under § 327 of the Bankruptcy Code must file an application for employment disclosing, among other things, "all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States

trustee." Fed. R. Bankr. P. 2014(a). In addition, the person to be employed must file a verified

statement setting forth those same connections. *Id.* "The disclosure requirements apply to all

professionals and are not discretionary. The professionals 'cannot pick and choose which

connections are irrelevant or trivial.'" *United States v. Gellene*, 182 F.3d 578, 588 (7th Cir. 1999)

(*quoting In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr. W.D. Okla. 1992)). "[C]ounsel who fail to

disclose timely and completely their connections proceed at their own risk because failure to

disclose is sufficient grounds to revoke an employment order and deny compensation." *In re

Crivello*, 134 F.3d 831, 836 (7th Cir. 1998) (collecting cases). In the most extreme application of

Rule 2014, it has been said that denial of fees or disqualification may be justified even when the

professional is in fact disinterested. *See In re Midway Indus. Contractors*, 272 B.R. 651, 662

(Bankr. N.D. Ill. 2001) (Sonderby, J.).

The burden of disclosure is placed on the applicant to produce the relevant facts, rather

than relying on the bankruptcy judge or parties in interest to conduct an independent factual

investigation to determine whether the applicant has a conflict. *In re Tinley Plaza Assocs., L.P.*,

142 B.R. 272, 278–79 (Bankr. N.D. Ill. 1992) (Schwartz, C.J.); *accord In re Crivello*, 134 F.3d at

839 ("Bankruptcy courts have neither the resources nor the time to investigate the veracity of the

information submitted in [retention and compensation] statements and affidavits and to root out

the existence of undisclosed conflicts of interest.").

If a professional has been erroneously employed despite not properly disclosing a

connection under Rule 2014, a bankruptcy court has discretion to deny compensation. *See* 11

U.S.C. § 328(c); *In re Crivello*, 134 F.3d at 837.

-17-

> Before a bankruptcy court elects to award partial payment to a law firm or
> other professional that was improperly employed, it should consider
> whether the professional's failure to disclose was intentional. If any
> evidence exists to support an inference of intent, then the court should not
> fall prey to the professional's story of confusion, miscommunication, or
> negligence.

*In re Crivello*, 134 F.3d at 839. "[A] bankruptcy court should punish a willful failure to disclose

the connections required by Fed. R. Bankr. P. 2014 as severely as an attempt to put forth a fraud

upon the court." *Id.* However, when the nondisclosure is unintentional, the bankruptcy judge may

exercise discretion in deciding whether that offense warrants denial of fees. *Id.*

Pope argues that Schiff should be disqualified and its compensation denied because the

law firm failed to disclose its prior representation of RMS in its original Rule 2014 Affidavit (the

"Affidavit"). That Affidavit contained the following statement: "In connection with its proposed

retention by the Debtors in this case, Schiff has researched its client database to determine

whether it has any relationships with the Debtors or any of their creditors. Based on the conflicts

search, Schiff has determined that it has no connections with the Debtors." (Mot. to Employ

[Bankr. Docket No. 5] ex. A, at 2.)

Schiff does admit that it represented RMS in the prebankruptcy arbitration proceeding

against Pope and that it did not disclose that relationship in the original Affidavit, but the firm

argues two factors in mitigation.[3] First, Schiff disclosed its prior representation of RMS in open

---

[3] Relying on *In re Golfview Developmental Ctr., Inc.*, 309 B.R. 758 (Bankr. N.D. Ill.
2004) (Squires, J.), Pope argues that the Debtors' arguments in their Response should be
disregarded for failure to cite any supporting legal authority. However, most of the Debtors'
Response is devoted to the refutation of Pope's factual allegations, for which no legal authority
exists or is necessary. Furthermore, the Debtors do cite legal authority when necessary. (*See, e.g.*,
Response 4.) Therefore, the Debtors' arguments will not be disregarded.

court. Specifically, Schiff points to the following statement made in open court on January 3, 2007: "We also, Schiff, Hardin as a law firm, has the institutional knowledge of this debtor. We've represented this company for a long time. We handled the arbitration. We know about the account, so it eliminates a significant amount of ramp up and educational time." (Response [Docket No. 250], at 2, ex. A.) Schiff provided this information, which supplemented its Affidavit, during the hearing on its retention. That suggests that Schiff did not intend to hide its relationship with RMS through filing of the Affidavit. Second, Schiff points out that it disclosed its prior representation of RMS on the record on other occasions, including in the first Adversary Complaint against Pope (Adversary no. 07-137) and in a Supplemental Affidavit [Bankr. Docket No. 214], which made the required disclosure in a writing filed before Pope filed its disqualification motion.

These various disclosures do tend to indicate both that Schiff's omission in the original Affidavit was careless but not intended to deceive, and also that it did not in fact hide the prior relationship. Although Schiff clearly did not at first strictly comply with Rule 2014, there is no indication that Schiff acted intentionally to hide its relationship with RMS. Moreover, Judge Sonderby (who at the time presided over the bankruptcies and related proceedings) had received in open court information about Schiff's prior relationship before she allowed Debtors to employ Schiff. Finally, Pope did not assert this issue as a disqualification until long afterwards, although it could have done so at the retention hearing. Therefore, no disqualification or reduction of fees is appropriate by reason of the careless but unintentional nondisclosure in writing of the relationship in the original Affidavit.

**C. Additional Issues Raised By Pope Do Not Demonstrate a Conflict**

In its Motion to Disqualify, Pope points to a number of specific actions by Schiff that

purportedly demonstrate Schiff's conflict of interest. None of these show a disqualifying

conflict.[4] First, Pope asserts that Schiff has a conflict because RPG paid Schiff $100,000 on

behalf of RMS in connection with the arbitration. Schiff admits that it received this payment, but

argues that it does not create a conflict. As the corporate entity in charge of maintaining

insurance for all of the Debtors, RPG made the payment pursuant to an insurance policy carrying

a $100,000 deductible. After the deductible payment was made, the insurance company paid

RMS's remaining legal fees. Moreover, the payment was made more than three years prior to

Pope's Motion to Dismiss and more than two years prior to filing of the Debtors' bankruptcy

cases. Although third-party payment of a client's legal fees might in some circumstances raise a

conflict of interest, *see* Model Rules of Prof'l Conduct R. 1.8(f) (2006), Pope has not

demonstrated how the $100,000 payment relating to the earlier arbitration presents a conflict in

these bankruptcy cases.

Second, Pope asserts that Schiff received a potentially preferential transfer that

---

[4] Pope purports to rely on several "facts" that supposedly constitute "overwhelming" evidence of Schiff's actual conflict. (Memorandum in Support of Motion to Dismiss [Bankr. Docket No. 223-2], at 10–11.) Pope provides no explanation, leaving it to the reader to imagine how the various facts and matters asserted might be interpreted as presenting a disqualifying conflict. As Pope recognizes (Reply [Bankr. Docket No. 257], at 3 n.2), "[p]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *In re Golfview Developmental Ctr., Inc.*, 309 B.R. 758, 771 (Bankr. N.D. Ill. 2004) (Squires, J.) (*citing United States v. Lanzotti*, 205 F.3d 651, 657 (7th Cir. 2000)). Even if Pope had been correct that these assertions demonstrate a conflict, any argument based on these facts must be deemed waived.

demonstrates the law firm's conflict of interest. Specifically, Pope identifies a check for

$4,923.83 issued by RPG to Schiff on September 29, 2006. (Mot. to Disqualify 4, ex. C.) The

check was issued within the ninety days prior to bankruptcy, and so might have qualified as a

preferential transfer if the other required elements had been met. *See* 11 U.S.C. § 547(b).

However, the amount of the check is less than the $5,000 threshold required at the time for

preference recovery when the debtor has primarily nonconsumer debts.[5] 11 U.S.C. § 547(c)(9).

Therefore, the check cannot be a preferential transfer and does not demonstrate any conflict of

interest.

Third, Pope finds a conflict of interest in Schiff's failure to pursue supposed preferential

payments to Jean and Douglas Chidley, insiders of RPG. On its Statement of Financial Affairs,

RPG did disclose a number of payments totaling $142,363.49 that were made to the Chidleys

within one year of the bankruptcy filing. However, Pope has not alleged any additional facts that

show how these payments were preferences within the meaning of § 547 of the Bankruptcy Code

or that suggest that Schiff represents the Chidleys. Nor has Pope explained how the payments to

those persons conflict with Schiff being disinterested. Schiff stated that it investigated the

payments and determined that they were not preferential. (Response 5.) If Pope was unsatisfied

with this, it might have made a demand and sought derivative standing to bring the preference

action itself. But more to the point, the possible existence of prebankruptcy payments to insiders

---

[5] When the Debtors' bankruptcies commenced, the threshold in 11 U.S.C. § 547(c)(9) was $5,000, but that amount was increased to $5,475 on April 1, 2007, pursuant to 11 U.S.C. § 104(b). Revision to Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(b) of the Bankruptcy Code, 72 Fed. Reg. 7082-1 (Feb. 7, 2007). Because the adjustment occurred after the Debtors' cases commenced, the $5,000 threshold applies in this case. *See id.*

of a debtor within the preference period does not in itself disqualify that debtor's counsel.

Fourth, Pope asserts that Schiff's conflict is demonstrated by its representation of RMS in its Adversary proceeding against Pope. (Mot. to Disqualify 11.) In that Adversary proceeding, RMS sought to vacate and oppose confirmation of the arbitration award entered against it. RMS alleged in its Complaint that (1) the Award contained gross errors of law or fact; (2) the arbitrators exceeded their powers; (3) the Award was procured by undue means; and (4) the Award was imperfectly executed. (Complaint in Adversary No. 07-137 [Docket No. 1], at 2.) Prosecuting those issues relating to the Arbitration Award did not require RMS to make any claim to ownership of the Account, and in fact the arbitrators did not determine the issue of ownership. *See generally In re Raymond Prof'l Group, Inc.*, 408 B.R. 711, 725–26 (Bankr. N.D. Ill. 2009). RMS did not therein take any position adverse to RPG or any other debtor. Therefore, no disqualifying conflict is apparent from Schiff's representation of RMS in that Adversary proceeding.

Fifth, Pope argues that Schiff should be disqualified because it has taken inconsistent positions in the arbitration and in the bankruptcy litigation. Specifically, Pope asserts that in the arbitration, Schiff argued that RMS owned the Account, while in the bankruptcy, the firm now takes argues that RPG owns it. However, there was no transcript of the arbitration proceeding, so the only evidence of what took place there are the competing affidavits of officers of Pope and the Debtors, which unsurprisingly differ in their accounts. Pope provides as further evidence the demonstrative exhibits used by RMS in the arbitration, but those exhibits are similarly unhelpful as they refer only to "Raymond" and do not distinguish between RMS and RPG. Furthermore, it

-22-

has already been held that the arbitration was an accounting of what RMS and Pope each claimed

was owed to it, not a determination of who owned the Account. *See generally In re Raymond*

*Prof'l Group*, 408 B.R. at 725–26. Litigation over who owes a debt is not the same as litigation

over who owns an account containing funds that might pay the debt. Even if RMS had asserted

ownership to the Account during the arbitration, arguing that RMS has the superior claim to the

Account as between RMS and Pope is not necessarily inconsistent with later arguing that RPG

has the superior claim to the Account as between RPG and Pope. At any event, Schiff has not

been shown to have taken inconsistent or improper positions in the prior Adversary litigation

other than Count I that would merit disqualification.

**D. No Cause Is Shown for Appointment of a Chapter 11 Trustee**

In a Chapter 11 case, the appointment of a trustee shall be ordered, among other things,

"for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of

the debtor by current management, either before or after the commencement of the case, or

similar cause . . . ." 11 U.S.C. § 1104(a)(1). The determination of cause is a fact-intensive inquiry

that lies within discretion of the judge. *In re Ont. Entm't Corp.*, 237 B.R. 460, 472 (Bankr. N.D.

Ill. 1999) (Katz, J.) (*citing In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989)). The

party seeking appointment of a trustee must show by clear and convincing evidence that cause

exists. *Id.* (*citing In re Sharon Steel Corp.*, 871 F.2d at 1226); *In re Bellevue Place Assocs.*, 171

B.R. 615, 623 (Bankr. N.D. Ill. 1994) (Schmetterer, J.). Because Chapter 11 is designed to give a

debtor the opportunity to reorganize and rehabilitate, precedent generally favors leaving the

debtor in possession to operate the business. *In re Ont. Entm't Corp.*, 237 B.R. at 472. Therefore,

the appointment of a trustee is an extraordinary remedy, the exception rather than the rule. *Id.*

Pope argues that cause exists for appointment of a trustee because an officer of the Debtors lied either in the arbitration litigation or in the bankruptcy litigation. However, Pope has not established any particular statements to have been lies by Schiff counsel that must be attributed to and bind one or more debtors.

Pope also argues that cause for appointment of a trustee exists because officers of the Debtors stand to benefit personally from positions taken by counsel for the Debtors. Whether or not the officers might benefit financially if the Account is determined to belong to RPG is conjecture. Despite repeatedly attributing such a motive to the Debtors' officers throughout its briefs, Pope has not actually alleged particular facts showing, if true, that the corporate officers acted in a manner so wrongful that its counsel had responsibility to curb such conduct.

Pope has shown that Schiff has an actual conflict between RMS and RPG, requiring removal of Schiff as counsel for RMS in Count I and in presentation of any motion for substantive consolidation that purports to be on behalf of RMS. RMS must employ separate, independent, and qualified counsel before its interests can be protected in Count I, or in a subsequent motion for substantive consolidation. Should such independent counsel not be retained for RMS as to those matters, Count I must be dismissed and consolidation cannot be requested. The remedies for disqualification ordered here deal directly with the disqualification issue, and a Chapter 11 trustee is not required to deal with that problem.

**E. Pope Did Not Waive its Motion to Disqualify**

"[A] former client who is entitled to object to an attorney's representation of an adverse

party on the ground of conflict of interest but who knowingly refrains from asserting it promptly

is deemed to have waived that right." *Chem. Waste Mgmt., Inc. v. Sims*, 875 F.Supp. 501, 504–05

(N.D. Ill. 1995) (Bucklo, J.); *see also In re Raymond Professional Group, Inc.*, 400 B.R. 624,

638 (Bankr. N.D. Ill. 2009) (finding that, because it delayed too long, Pope in that instance

waived its right to seek disqualification based on Schiff's purported prior representation of

Pope). Waiver is found in such a case because "delay in objecting to the conflict 'can be

reasonably perceived as an admission that the principles of confidentiality and conflict of interest

are not significantly related to the procedural integrity of [the] case.'" *Chem. Waste Mgmt.*, 875

F.Supp. at 505 (*quoting Glover v. Libman*, 578 F.Supp. 748, 767 (N.D. Ga. 1983)).

When, however, the reason for disqualification implicates the public interest rather than

just the relationship between the moving party and the firm to be disqualified, it should be held

that waiver and laches defenses do not apply. *See, e.g., MPL, Inc. v. Cook*, 498 F.Supp. 148, 151

(N.D. Ill. 1980) (Shadur, J.); *Skokie Gold Liquors, Inc. v. Joseph E. Seagram & Sons*, 452 N.E.2d

804, 811 (Ill. App. Ct. 1983).

The Debtors argue that Pope waived the disqualification issue by not raising it during the

ten months after the bankruptcy cases were filed. However, Pope's Motion to Disqualify now in

issue is based on violations of the professional employment provisions of the Bankruptcy Code,

not on protection of the attorney-client relationship. As discussed above, those statutory

provisions are designed to protect the bankruptcy system and to guarantee adequate

-25-

representation to a debtor, not to protect the confidences of an attorney's former client. A finding

that Pope waived the disqualification issue might be appropriate if Pope were asserting its rights

as a former client, but Pope is not doing that here. Because Pope alleges violations of specific

statutory provisions that implement policies broader than protection of the attorney-client

relationship, therefore Pope did not waive the issues underlying its Motion to Disqualify on

which disqualification is granted even though it delayed for some months after Schiff retention

was approved before bringing that motion.

## II. RPG'S MOTION TO VOLUNTARILY DISMISS COUNT I WITHOUT PREJUDICE

RPG seeks to dismiss Count I without prejudice in an apparent effort to be free to reserve

and replead it if the appeal of the Count VI judgment is successful. RPG would then seek to

compel Pope to return to court to dispose of the contention that RPG is the real owner of the

Account.

Unless no responsive pleading has been made or the parties agree, "an action may be

dismissed at the plaintiff's request only by court order, on terms that the court considers proper."

Fed R. Civ. P. 41(a)(2) (made applicable in this proceeding by Fed. R. Bankr. P. 7041). Such

dismissal is without prejudice, unless the court orders otherwise. *Id.* Thus, voluntary dismissal

under Rule 41(a)(2) is allowed at the trial court's discretion. *Kunz v. DeFelice*, 538 F.3d 667, 677

(7th Cir. 2008) (*citing Tyco Labs., Inc. v. Koppers, Co.*, 627 F.2d 54, 56 (7th Cir. 1980)). "A . . .

court abuses its discretion only if the defendant shows that she will suffer 'plain legal

prejudice.'" *Id.* "[P]lain legal prejudice is more than the mere prospect of a second lawsuit." *In re*

*Smith*, 227 B.R. 667, 672 (Bankr. N.D. Ill. 1998) (Schmetterer, J.) (*citing Stern v. Barnett*, 452

-26-

F.2d 211, 213 (7th Cir. 1971)). It may be demonstrated by several factors, including "'[t]he

defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on

the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a

dismissal, and the fact that a motion for summary judgment has been filed by the defendant.'"

*Kunz*, 538 F.3d at 677 (*quoting Pace v. S. Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969)).

   When a court allows a plaintiff to dismiss an action voluntarily, a typical condition of

dismissal without prejudice is that the plaintiff pay the defendant's expenses incurred in

defending the suit, including reasonable attorneys' fees. *Marlow v. Winston & Strawn*, 19 F.3d

300, 303 (7th Cir. 1994). "[S]uch terms and conditions 'are the quid for the quo of allowing the

plaintiff to dismiss his suit without being prevented by the doctrine of res judicata from bringing

the same suit again.'" *Id.* (*quoting McCall-Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985)).

Dismissal with prejudice should be a condition of dismissal when a defendant would otherwise

suffer legal prejudice. *See Endo v. Albertine*, 863 F.Supp. 708, 716 (N.D. Ill. 1994) (Holderman,

J.) (*citing Ratkovitch v. Smith Kline*, 951 F.2d 155, 157 (7th Cir. 1991)). Before a suit is

dismissed with prejudice, however, a plaintiff who had moved for dismissal without prejudice

must be given the opportunity to withdraw its motion. *See Marlow*, 19 F.3d at 305.

   As discussed above, RPG's persistence in pursuing Count I of its Complaint has turned

Schiff's potential conflict into an actual, disqualifying conflict. In an effort to save but defer all

Count I issues until after its appeal of other issues are decided, RPG has moved to voluntarily

dismiss Count I without prejudice, intending in its interests to preserve the action for possible

renewal depending on results of appeals. But in opposing that request, Pope is also entitled to

-27-

have its interests considered.

Count I has remained pending for more than two years and has been the basis for much litigation over the possible disqualification of Schiff as counsel for the Debtors. Should RPG be permitted to dismiss Count I without prejudice, Pope risks not merely a second lawsuit, but also the loss of expenses incurred defending against Count I if any can be demonstrated, and expenses incurred in bringing its Motion to Disqualify that directly impacted on Count I. Failure to recover such expenses would certainly rise to the level of plain legal prejudice.

Therefore, RPG will be given a choice among three alternatives: (1) dismiss Count I without prejudice upon the condition that it pay Pope's expenses and attorneys' fees incurred defending against that Count and bringing the Motion to Disqualify, in amounts to be determined; (2) dismiss Count I with prejudice; or (3) withdraw its motion to dismiss that Count. RPG and Schiff will by separate order be directed to file a statement setting forth their intended choice.

Since Schiff lawyers are disqualified by conflict from representing RMS for reasons earlier discussed, should Count I not be dismissed voluntarily, those lawyers will nonetheless be barred from representing RMS in that action. Therefore, Count I cannot be pursued at all until and unless RMS hires separate and independent counsel and is joined in Count I as a necessary party in some capacity. If such RMS independent counsel is not employed within the time to be set for that, then Count I will be dismissed by court order with prejudice because it is brought by counsel who are in conflict.

### III. DEBTORS' MOTION FOR SUBSTANTIVE CONSOLIDATION

Substantive consolidation, a doctrine purportedly derived from the equity powers expressed in 11 U.S.C. § 105, is intended to ensure the equitable treatment of all creditors. *Eastgroup Props. v. S. Motel Ass'n*, 935 F.2d 245, 248 (11th Cir. 1991); *In re Augie/Restivo Baking Co.*, 860 F.2d 515, 518 (2d Cir. 1988). "Substantive consolidation usually results in, *inter alia*, pooling the assets of, and claims against, the two entities; satisfying liabilities from the resultant common fund; eliminating inter-company claims; and combining the creditors of the two companies for purposes of voting on reorganization plans." *In re Augie/Restivo Baking Co.*, 860 F.2d at 518. "Because of the dangers in forcing creditors of one debtor to share on a parity with creditors of a less solvent debtor, . . . substantive consolidation 'is no mere instrument of procedural convenience . . . but a measure vitally affecting substantive rights,' to 'be used sparingly.'" *Id.* (citations omitted).

Various approaches have been adopted to determine when substantive consolidation is warranted. One test, adopted by opinions in the Second and Ninth Circuits, focuses on "whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit" or "whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." *In re Augie/Restivo Baking Co.*, 860 F.2d at 518; *accord In re Bonham*, 229 F.3d 750, 766 (9th Cir. 2000). Although the presence of either factor is said to be a sufficient reason to order substantive consolidation, consolidation based on entanglement of the debtors' affairs "is justified only where 'the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the

-29-

creditors' or where no accurate identification and allocation of assets is possible." *In re Bonham*,

229 F.3d at 766 (alteration in original) (*quoting In re Augie/Restivo Baking Co.*, 860 F.2d at

519).

An alternative test, adopted by opinions in the District of Columbia and Eleventh

Circuits, focuses on whether "'the economic prejudice of continued debtor separateness'

outweighs 'the economic prejudice of consolidation.'" *Eastgroup Props.*, 935 F.2d at 249

(*quoting In re Snider Bros.*, 18 B.R. 230, 234 (Bankr. D. Mass. 1982)); *accord In re Auto-Train

Corp.*, 810 F.2d 270, 276 (D.C. Cir. 1987). First, "the proponent of substantive consolidation

must show that (1) there is substantial identity between the entities to be consolidated; and (2)

consolidation is necessary to avoid some harm or to realize some benefit." *Eastgroup Props.*, 935

F.2d at 249 (*citing In re Auto-Train Corp.*, 810 F.2d at 276). If the proponent makes such a

showing, then an objecting creditor must show that "(1) it has relied on the separate credit of one

of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." *Id.*

(*citing In re Auto-Train Corp.*, 810 F.2d at 276). Factors possibly relevant to whether there is a

substantial identity of interests between the debtors would include:

(1)    The presence or absence of consolidated financial statements.
(2)    The unity of interests and ownership between various corporate
       entities.
(3)    The existence of parent and intercorporate guarantees on loans.
(4)    The degree of difficulty in segregating and ascertaining individual
       assets and liabilities.
(5)    The existence of transfers of assets without formal observance of
       corporate formalities.
(6)    The commingling of assets and business functions.
(7)    The profitability of consolidation at a single physical location.

*Id.*

Whether substantive consolidation of the Debtors' estates is appropriate in this case cannot yet be decided. As discussed above, the Schiff firm has an actual conflict in bringing the Motion for Substantive Consolidation because the law firm cannot fulfill its fiduciary duties to the estates and creditors of both RPG and RMS when advocating for consolidation. Therefore, that motion cannot and will not be considered unless is presented by separate, independent, and qualified counsel for both RPG and RMS, or at least until it is presented by one of these debtors when the other is represented by independent qualified counsel retained subject to court approval to represent RMS in connection with Count I and the consolidation issue.

Whether substantive consolidation is permitted at all under the Bankruptcy Code has not been decided by any opinion of the Seventh Circuit Court of Appeals. When, as, and if the merits of a motion for substantive consolidation are reached, the applicability of the reasoning and basis for rulings by the other Circuits that 11 U.S.C. § 105 or other authority provides a basis for substantive consolidation must first be decided. *See Disch v. Rasmussen*, 417 F.3d 769, 777 (7th Cir. 2005) ("[T]he powers of conferred by § 105(a) must be exercised 'within the confines of the Bankruptcy Code.'"). The question whether there is in fact authorization for such a step will then have to be decided. For now, this Motion must be denied because it is presented by disqualified counsel who present it on behalf of both RPG and RMS.

## VI. CONCLUSION

For the foregoing reasons, the following orders will separately be entered.

1.    Pope's Motion to Disqualify will be granted in part as follows:

    a.    Schiff will be removed as counsel for RMS in connection with Count I and

possible substantive consolidation of the estates because of its disqualifying conflict relating to those two matters. RMS will be given 21 days to obtain new and independent counsel to represent RMS on those two issues. Should new and independent counsel for RMS not appear and be approved, Count I will be dismissed with prejudice by court order.

b.    Schiff's fees will be denied, and shall be ordered disgorged if already paid, for work done on Count I of the Complaint, Pope's Motion to Disqualify, and the Debtors' Motion for Substantive Consolidation. Further hearing will be set to determine the amounts.

c.    Schiff will not be disqualified and its fees will not be denied for failure to disclose its prior representation of RMS in its original Rule 2014 Affidavit.

d.    Pope's motion to appoint a trustee will be denied.

2.    RPG and Schiff will be ordered to file a statement within seven days of its intentions as to of RPG's Motion to Dismiss Count I Without Prejudice as to whether:

a.    The Motion will be dismissed without prejudice on condition that RPG pay fees incurred by Pope for defense of Count I and bringing the Motion to Disqualify, in amounts to be determined; or

b.    RPG will agree to dismissal of Count I with prejudice; or

c.    RPG will withdraw the Motion, but shall be barred from pursuing Count I until RMS obtains new counsel.

3.    The Debtor's Motion for Substantive Consolidation will be denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 17th day of December, 2009.