## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| RAYMOND PROFESSIONAL GROUP, INC., et al., | ) | Bankruptcy No. 06 B 16748 |
| Debtors. | ) | (Jointly Administered) |
| RAYMOND PROFESSIONAL GROUP, INC., Plaintiff, | ) | |
| RAYMOND MANAGEMENT SERVICES, INC., n/k/a RAYMOND PROFESSIONAL GROUP–DESIGN/BUILD, INC., | ) ) ) | |
| Co-Plaintiff as to Counts II–VI, | ) | |
| v. | ) | Adversary No. 07 A 00639 |
| WILLIAM A. POPE COMPANY, Defendant. | ) | |
| WILLIAM A. POPE COMPANY, | ) | |
| Counter-Plaintiff as to Count VI, | ) | |
| v. | ) | |
| RAYMOND PROFESSIONAL GROUP, INC., and RAYMOND MANAGEMENT SERVICES, INC., n/k/a RAYMOND PROFESSIONAL GROUP–DESIGN/BUILD, INC., | ) ) ) | |
| Counter-Defendants. | ) | |
| NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, a Connecticut Corporation | ) ) | |
| Intervening Plaintiff, | ) | |
| v. | ) | |
| RAYMOND PROFESSIONAL GROUP, INC., RAYMOND PROFESSIONAL GROUP– DESIGN/BUILD, INC., and WILLIAM A. POPE COMPANY, | ) ) ) | |
| Intervening Defendants. | ) | |

## MEMORANDUM OPINION DENYING DEBTORS' MOTION FOR STAY PENDING APPEAL

### INTRODUCTION

Defendant William A. Pope Company ("Pope") and Plaintiff-Debtor Raymond

Management Services, Inc., n/k/a Raymond Professional Group–Design/Build, Inc., ("RMS")

contracted to construct a project for the owner of a power facility.[1]  Plaintiff-Debtor Raymond

Professional Group, Inc., ("RPG") was not part of that contract. Pope and RMS set up an account

(the "Account") on which they had joint signatory powers subject to contractual claims against

each other to be resolved after construction was completed. To resolve those claims, Pope and

RMS litigated their contractual rights in an arbitration proceeding prebankruptcy. In that

proceeding, the arbitration panel made an award (the "Award") in Pope's favor, details of which

are set forth below. Rather than accept the panel's decision, on December 18, 2006, RPG, RMS,

and several related entities filed Chapter 11 bankruptcy cases, which are now jointly

administered. Several Adversary proceedings followed. The Account funds over which the

parties have disputed now total over $3.5 million.

    Count I of the Adversary proceeding, in which RPG asserted its claim to the Account,

was dismissed with prejudice because it was brought and presented by conflicted counsel who

were not replaced. In a related proceeding, the motion of Debtors to consolidate the subject

Jointly Administered bankruptcy cases was denied. These rulings were not appealed.

    Earlier, on September 24, 2009, it was adjudged in Adversary proceeding number 07-A-

137 that the Award was entirely confirmed by Judgment. It was thereby determined that RMS

owed $3,634,714 to Pope, that Pope is contractually entitled to collect that amount out of the

---

[1] The relationship between the parties and the history of their dispute have been
exhaustively documented elsewhere. *See In re Raymond Prof'l Group, Inc.*, 397 B.R. 414
(Bankr. N.D. Ill. 2008), *supplemented by* 400 B.R. 621 (Bankr. N.D. Ill. 2008); *In re Raymond
Prof'l Group, Inc.*, 408 B.R. 711 (Bankr. N.D. Ill. 2009), *amended by* 410 B.R. 813, 813–16
(Bankr. N.D. Ill. 2009). Those details will not be repeated here, but they are fully incorporated
herein.

Account, and that RMS is not contractually due any payment from Pope or from the Account. No appeal was taken from that Judgment. The amount now in the Account, including interest, is about $3.5 million, so the Judgment amount due Pope, with accrued post-judgment interest, far exceeds the funds available to pay that debt.

The Motion for Stay Pending Appeal does not even discuss any of those unappealed rulings, but asserts rights based on contentions inconsistent with and barred by them.

Pursuant to those unappealed final rulings, neither RMS nor RPG have any rights in or to the Account moneys. Their dream of future consolidation of cases so as to get control of the disputed Account cannot be asserted by conflicted counsel and their Motion to Consolidate has already been denied by unappealed ruling.

For reasons discussed below in more detail, the Plaintiffs' motion will be denied and the Defendant's motion to receive the funds that were adjudged to belong to it will be granted.

## HISTORY OF PROCEEDINGS

Final Judgments now on appeal were entered in Counts II through VI in favor of Pope. RPG and RMS have filed a notice of appeal from those Judgments and now move for a stay pending appeal. Pope moves to have the funds in the Account, which were frozen by Court order pending final decisions herein, entirely released to it.

### A. Rulings Not Appealed

The Motion for Stay Pending Appeal disregards critical rulings made during the progress of this and other contested matters, rulings that determined the rights of the parties as to contractual rights in the Account involved here and that were not appealed. The first was in an Adversary proceeding, number 07-A-137, filed by RMS against Pope. There, RMS sought to

vacate the Arbitration Award and Pope sought to have the Award confirmed. The Award made

three rulings: (1) Pope is entitled to get payment of the debt due it out of the Account; (2) RMS

at that time owed Pope $3,634,714, which was more money than the Account contained; and (3)

RMS is not contractually owed anything. Upon Pope's Motion for Summary Judgment,

Judgment in that Adversary proceeding was entered in Pope's favor confirming the foregoing

Award in its entirety. (Order Granting Mot. for Summary Judgment [Docket No. 59]; Amended

Final Order Granting Mot. for Summary Judgment [Docket No. 63].) RMS did not appeal that

Judgment, which therefore finally established the amount of debt RMS owes to Pope, determined

that the entire Account was to be the source of payment to Pope through their contractual

agreement, and determined that RMS is owed nothing. *See generally In re Raymond Prof'l*

*Group, Inc.*, 397 B.R. 414 (Bankr. N.D. Ill. 2008), *supplemented by* 400 B.R. 621 (Bankr. N.D.

Ill. 2008).

When the bankruptcy cases were filed, despite the requirement of joint signatures on the

Account, RPG somehow persuaded the bank holding that Account to shift the Account funds

without Pope's consent or Court approval into a debtor-in-possession account owned only by

RPG. RPG had no claim to that money, contractually or otherwise, but it thereby attempted to

usurp control of the money so as to block creditors of RMS (who included Pope) from collecting

claims against RMS, which was thereby deprived of the Account as a bankruptcy asset. So after

the Count VI final adjudication that Pope owned the Account under the Illinois Mechanics Lien

Act as well as contractually, the funds were ordered to be transferred into a new account in the

name of Pope located in another bank, but that new account cannot be drawn on without further

order of Court. This ensured that neither RMS or RPG could mishandle the funds again while the

-4-

post-judgment matters were resolved, and froze the funds until all Counts of the Adversary proceeding were decided.

The second ruling that was not appealed was the dismissal with prejudice of Count I, in which RPG sought to claim the Account as its own. Its counsel also represents RMS. Therefore, it was found and held that pursuit of that claim put the Debtors' counsel in actual and direct conflict with RMS and the creditors of RMS, including Pope. *See In re Raymond Prof'l Group, Inc.*, 421 B.R. 891 (Bankr. N.D. Ill. 2009). Since RMS had contracted with Pope but RPG was not part of the contract, the RPG claim of ownership over the Account was an attempt to render futile the contractual claims against RMS by Pope and other creditors. RPG and RMS were given an opportunity to secure separate counsel [Adversary Docket Nos. 557, 566], but they did not. Therefore, Count I was dismissed with prejudice [Adversary Docket No. 593] because it was brought by conflicted counsel who were not replaced.

The third decision that was not appealed was the order denying the Debtors' Motion for Substantive Consolidation. It was found and held that pursuit of that Motion also put the Debtors' counsel in conflict, *Raymond Prof'l Group*, 421 B.R. at 905, 912–13, and the Motion was denied for being brought by conflicted counsel [Adversary Docket No. 555]. That ruling was not appealed, yet a contention now argued by the same conflicted counsel is that the Debtors may yet control the Account in event of reversal should substantive consolidation ultimately be permitted.

As discussed below, any analysis of RPG's chance of success on appeal must begin with the fact that (1) RPG has no contractual right to the Account and was denied by conflict of its counsel from seeking to assert any right to the Account, and (2) the rulings confirming the

Award, dismissing Count I with prejudice, and denying the Motion for Substantive Consolidation

have not been appealed. Therefore, RPG's assertion of rights and dream of getting control of the

money through substantive consolidation have already been adjudicated by unappealed rulings.

Any analysis of RMS's chance of success on appeal must start with the unappealed

Judgment confirming the Arbitration Award that only Pope has contractual rights to payment out

of the Account and that RMS has no right to any payment out of the Account or otherwise. Since

that ruling was not appealed, the contractual right of Pope to Account moneys is not subject to

further debate. The Motion for Stay Pending Appeal only argued a second basis for Pope's

ownership of the Account, the ruling in the Judgment on Count VI that Pope holds a lien under

the Illinois Mechanics Lien Act. Pope's contractual rights to be paid from the funds in the

Account were not discussed or challenged in the Motion to Stay. Given the full history, they

cannot now be challenged. In light of the unappealed Judgment confirming the arbitration panel's

finding that no debt is owed to RMS, it was adjudicated in Count VI that Pope has an

undisputable contractual claim, as well as a mechanics lien claim on the money, and that RMS,

who has no debt due to it, has no lien claim. Neither the contractual right of Pope nor the absence

of debt that might support a lien claim by RMS was discussed in the pending motion.

## B. Rulings Appealed

The Judgments that RPG and RMS do appeal are in Counts II through VI of the above-

entitled Adversary proceeding. The instant Motion for Stay Pending Appeal applies only to those

Judgments.

Originally, RPG brought this Adversary proceeding as sole plaintiff against Pope, seeking

(1) a declaration that RPG owned the account (Count I), (2) to avoid the arbitration Award as a

prepetition transfer under various theories (Counts II–IV), and (3) disallowance of Pope's

bankruptcy claim to the extent the Award was an improper prepetition transfer (Count V). The

Complaint was later amended to add Count VI, brought by both RPG and RMS to seek a

declaration that Pope did not own the Account. Pope counterclaimed to seek a declaration that

the Account belonged to it. After trial, Judgment was entered in Pope's favor. (Final Order of

Judgment [Docket No. 430]; Amended Final Order of Judgment [Docket No. 507].) It was

thereby finally adjudicated that all funds in the Account were held for the sole benefit of Pope,

and therefore those funds were property belonging to Pope, not property of the bankruptcy estate

of either RMS or RPG. *See In re Raymond Prof'l Group, Inc.*, 408 B.R. 711, 748–49 (Bankr.

N.D. Ill. 2009), *amended by* 410 B.R. 813, 813–16 (Bankr. N.D. Ill. 2009). RPG and RMS

moved to alter or amend the Judgment [Docket No. 440], and that motion was denied. *See In re

Raymond Prof'l Group, Inc.*, 414 B.R. 433 (Bankr. N.D. Ill. 2009). RPG and RMS appealed the

Judgment on Count VI, but proceedings on appeal were stayed pending resolution of the

remaining counts in the Adversary proceeding.

　　　After Judgment was entered on Count VI, RMS and RPG jointly pursued Counts II

through V. In those Counts, the Debtors sought to avoid the Award using the strong-arm power

in 11 U.S.C. § 544 (Count II) or on grounds that the Award was preferential transfer (Count III)

or was a fraudulent transfer (Count IV), and to disallow Pope's bankruptcy claim based on the

assertion that Pope received an avoidable prepetition transfer (Count V). Each of those claims

relied on an assertion that the prebankrutpcy Award constituted a "transfer" of property under the

Bankruptcy Code. However, Judgment was entered on those Counts in favor of Pope [Docket

No. 594] because the Award did not effect a transfer of property, but only determined contractual

rights of the parties, all subject to confirmation of the Award which came post-petition. *See In re Raymond Prof'l Group, Inc.*, No. 07 A 00639, 2010 WL 2036371 (Bankr. N.D. Ill. May 20, 2010). RPG and RMS have appealed the Judgment on Counts II, III, VI, and V, but in their Motion do not show how the determination of contractual liability and Pope's contractual right to payment from the Account constituted a transfer of property, and so they do not demonstrate any errors.

After Judgment was entered on Counts II through V, and in light of the prior rulings on Count VI and in Adversary proceeding number 07-A-137 in which Judgment was entered confirming the Arbitration Award, Pope moved for turnover of the Account held in its name in a new bank account but frozen subject to Court order [Docket No. 591]. In response, RPG and RMS moved for a stay pending appeal of (1) the Judgment on Count VI and (2) the Judgment on Counts II through V [Docket No. 604].

## DISCUSSION

A party against whom a money judgment has been entered may obtain a stay of that judgment pending appeal by posting a *supersedeas* bond. *See* Fed. R. Civ. P. 62(d) (made applicable by Fed. R. Bankr. P. 7062); *In re Doctors Hospital of Hyde Park, Inc.*, 376 B.R. 242, 245–46 (Bankr. N.D. Ill. 2007). However, a *supersedeas* bond is mandatory only if the appellant seeks a stay without court order; a bond is not required if the appellant "is content to throw himself on the district judge's discretion." *N. Ind. Pub. Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986). That is, if the appellant cannot or does not wish to post a bond, it can seek a discretionary stay pending appeal. RMS and RPG now seek a discretionary stay.

Upon motion for a discretionary stay pending appeal, ". . . the bankruptcy judge may . . . make any . . . appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Fed. R. Bankr. P. 8005. Four factors are relevant to whether a stay should be granted: ". . . 1) whether the appellant is likely to succeed on the merits of the appeal; 2) whether the appellant will suffer irreparable injury absent a stay; 3) whether a stay would substantially harm other parties in the litigation; and 4) whether a stay is in the public interest." *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). The party seeking a stay has the burden to show that it is likely to succeed on the merits and that it will suffer irreparable harm absent a stay. *Id.* Only if the movant makes these showings are the other factors considered. *Id.* If the movant does not make the first two threshold showings, the stay should be denied without further analysis. *Id.*

**A. RPG Is Not Entitled to a Stay Because it Has No Possible Claim to the Account as its Claim to the Account Was Dismissed with Prejudice by Unappealed Order and its Counsel Continue to Seek Access by RPG to the Account While Those Counsel Remain in Conflict with Their Duties as Counsel for RMS and its Creditors**

As a preliminary matter, RPG is not even entitled to seek a stay pending appeal. Whether or not RPG could show any reversible error on appeal, RPG's interests will not be injured at all if the Judgments are not stayed because it has absolutely no claim to the Account.

Count I, in which RPG asserted its sole ownership interest in the Account, was dismissed with prejudice for being brought by conflicted counsel. When the conflict issue was raised, RPG sought to dismiss voluntarily without prejudice. For reasons stated in the Memorandum Opinion on Count I, *see In re Raymond Prof'l Group, Inc.*, No. 07 A 639, 2010 WL 2026704 (Bankr. N.D. Ill. May 20, 2010), after RPG did not comply with an order to get different counsel, the

action was then dismissed involuntarily with prejudice under Rule 7041 Fed. R. Bankr. P. (Rule

41(b) Fed. R. Civ. P.), thereby adjudicating the merits. RPG did not appeal that decision. *Res*

*judicata* bars a plaintiff from reasserting a complaint dismissed with prejudice. *See* Fed. R. Civ.

P. 41(b) (made applicable by Fed. R. Bankr. P. 7041) (involuntary dismissal—except for lack of

jurisdiction, improper venue, or failure to join a party—operates as an adjudication on the

merits); *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (*res judicata* precludes parties from

relitigating issues that were or could have been raised after court enters final judgment on the

merits of an action). Therefore, RPG can no longer assert any rights in the Account.

Moreover, RPG does not have any contractual claim to the funds or possibility of getting

control of the funds through a possible future motion for substantive consolidation, which it

relies on. The Debtors earlier moved for substantive consolidation, and that motion was denied

because it was brought by conflicted counsel.

Additionally, even if that issue had not been ruled on, substantive consolidation would

not be appropriate in this case.

Substantive consolidation, a doctrine derived from the equity powers expressed in 11

U.S.C. § 105, is intended to ensure the equitable treatment of all creditors. *Eastgroup Props. v. S.*

*Motel Ass'n*, 935 F.2d 245, 248 (11th Cir. 1991); *In re Augie/Restivo Baking Co.*, 860 F.2d 515,

518 (2d Cir. 1988). "Substantive consolidation usually results in, *inter alia*, pooling the assets of,

and claims against, the two entities; satisfying liabilities from the resultant common fund;

eliminating inter-company claims; and combining the creditors of the two companies for

purposes of voting on reorganization plans." *Augie/Restivo*, 860 F.2d at 518. "Because of the

dangers in forcing creditors of one debtor to share on a parity with creditors of a less solvent

-10-

debtor, . . . substantive consolidation 'is no mere instrument of procedural convenience . . . but a measure vitally affecting substantive rights,' to 'be used sparingly.'" *Id.* (citations omitted).

Various approaches have been adopted to determine whether and when substantive consolidation is warranted. One test, adopted by opinions in the Second and Ninth Circuits, focuses on "whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit" or "whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." *Id.*; *accord In re Bonham*, 229 F.3d 750, 766 (9th Cir. 2000). Although the presence of either factor is said to be a sufficient reason to order substantive consolidation, consolidation based on entanglement of the debtors' affairs "is justified only where 'the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors' or where no accurate identification and allocation of assets is possible." *Bonham*, 229 F.3d at 766 (alteration in original) (quoting *Augie/Restivo*, 860 F.2d at 519).

An alternative test, adopted by opinions in the District of Columbia Circuit and Eleventh Circuit, focuses on whether "'the economic prejudice of continued debtor separateness' outweighs 'the economic prejudice of consolidation.'" *Eastgroup Props.*, 935 F.2d at 249 (quoting *In re Snider Bros.*, 18 B.R. 230, 234 (Bankr. D. Mass. 1982)); *accord In re Auto-Train Corp.*, 810 F.2d 270, 276 (D.C. Cir. 1987). First, "the proponent of substantive consolidation must show that (1) there is substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit." *Eastgroup Props.*, 935 F.2d at 249 (citing *Auto-Train*, 810 F.2d at 276). If the proponent makes such a showing, then an objecting creditor must show that "(1) it has relied on the separate credit of one of the entities to

-11-

be consolidated; and (2) it will be prejudiced by substantive consolidation." *Id.* (citing *Auto-Train*, 810 F.2d at 276). Factors possibly relevant to whether there is a substantial identity of interests between the debtors would include:

    (1)    The presence or absence of consolidated financial statements.

    (2)    The unity of interests and ownership between various corporate entities.

    (3)    The existence of parent and intercorporate guarantees on loans.

    (4)    The degree of difficulty in segregating and ascertaining individual assets and liabilities.

    (5)    The existence of transfers of assets without formal observance of corporate formalities.

    (6)    The commingling of assets and business functions.

    (7)    The profitability of consolidation at a single physical location.

*Id.*

    In this case, substantive consolidation could not be appropriate. RPG never had a claim to the Account, as the Account and all funds in it came about as a result of the contractual relationship between RMS and Pope. Substantive consolidation would be a windfall to RPG and its creditors and would substantially harm Pope and other creditors who dealt only with RMS.

    Additionally, the Debtors have taken great pains throughout this litigation to demonstrate that their affairs are not entangled. For example, when the bankruptcy cases were filed, RPG scheduled the Account as its property and RMS (represented by the same attorneys) scheduled Pope as its creditor. In its claim in Count I, which was dismissed with prejudice, RPG sought declarations that it alone owned the Account and that "Pope is, at best, an unsecured creditor of [RMS]." (Compl. 31–32.) From these assertions, the Debtors themselves impliedly conceded that they are distinct entities whose estates should remain separate.

    Because RPG's claim to ownership of the Account was dismissed with prejudice and

-12-

because the Motion for Substantive Consolidation has already been denied, RPG has no possible rights and therefore cannot suffer any injury to its rights if the judgments in Counts II through VI are not stayed. Moreover, consolidation of the cases has been denied and—even if that had not been decided—consolidation is not warranted. Therefore, RPG is not entitled to a stay pending appeal.

## B. RMS Is Not Entitled to a Stay Because it Has No Rights That Can Be Injured, No Mechanics Lien Claim to the Account, and Therefore Cannot Succeed on Merits of its Appeal

Because RPG has no possible claim to the funds and its rights cannot be injured absent a stay pending appeal, the remaining points argued in the Motion for Stay Pending Appeal may apply only on behalf of RMS. For reasons discussed below, RMS is not entitled to a stay pending appeal.

### 1. RMS Will Not Suffer Injury to Any of its Rights If the Judgments Are Not Stayed Because it Has No Claims to the Account and Mere Mootness Is Not Injury to Rights

RMS argues that it will suffer irreparable injury if the judgments are not stayed because Pope could spend the Account money, thereby mooting the appeal, and because RMS might not be able to collect the money from Pope should RMS prevail on appeal.

RMS does not and cannot present a substantial issue on appeal. It is barred by *res judicata* and an unappealed decision from claiming that it is owed anything, or from contesting Pope's contractual right to be paid from the Account. Therefore, RMS did not and cannot show that absence of a stay will cause irreparable harm to any of its rights. The mootness argument does not show the necessary harm.

RMS argues that if Pope gets the Account money, it might become insolvent and

therefore judgment proof at some point in the future. Such a possibility is entirely speculative.

However, even if the absence of a stay could somehow moot RMS's appeal, that would not constitute irreparable harm. "It is well settled that an appeal being rendered moot does not itself constitute irreparable harm." *In re 203 N. LaSalle St. P'ship*, 190 B.R. 595, 598 (N.D. Ill. 1995). *But see In re Doctors Hosp. of Hyde Park, Inc.*, 376 B.R. 242, 249 (Bankr. N.D. Ill. 2007) (mootness might be irreparable harm, but only when movant has shown likelihood of success on a substantial appellate issue). RMS has not shown potential harm to any interest that it holds.

### 2. RMS Cannot Have Any Mechanics Lien Claim Against the Money

In Adversary proceeding 07-A-137, Judgment was entered and docketed on December 28, 2008, confirming the Arbitration Award, which had found that RMS owed Pope $3,634,714 on their Subcontract and that RMS was due nothing from Pope or from the Account. The amount due to Pope exceeded the amount on hand in the Account. Under Rule 8002(a) Fed. R. Bankr. P., that Judgment became final and unappealable. Consequently, no monies at all are due to RMS, and any mechanics lien trust claim that might have arisen on its behalf to secure its former claims to payment is valueless. *See In re Golfview Dev'l Ctr., Inc.*, 309 B.R. 758, 769 n.3 (Bankr. N.D. Ill. 2004) (finding that where nothing is due on a contract for the improvement of real property, the contractor may not bring a claim under the Mechanics Lien Act). RMS does not ever discuss that ruling, which was expressly made in the Conclusions adjudicating Count VI:

> 6. In Adversary proceeding 07-A-00137, Judgment was entered and docketed on December 23, 2008, confirming the Arbitration Award which had found that RMS owed Pope $3,634,714 on their Subcontract and that RMS was due nothing from Pope. That amount due to Pope exceeds the amount on hand in the RPG DIP Account. Under Rule 8002(a) Fed. R. Bankr.P., that Judgment became final and unappealable ten days later on January 2, 2009. Consequently, no monies at all are due to RMS and its

-14-

mechanics lien trust claim which arose on February 4, 2003, is valueless. *See Golfview Dev'l Ctr., Inc. v. All-Tech Decorating Co. (In re Golfview Dev'l Ctr., Inc.)*, 309 B.R. 758, 769 n.3 (Bankr. N.D. Ill.2004) (finding that where nothing is due on a contract for the improvement of real property, the contractor may not bring a claim under the Mechanics Lien Act).

*In re Raymond Prof'l Group, Inc.*, 408 B.R. 711, 748–49 (Bankr. N.D. Ill. 2009), *amended by* 410 B.R. 813, 816–17 (Bankr. N.D. Ill. 2009). Accordingly, even if funds in the Account were not contractually due to Pope, they are subject to a statutory trust under section 21.02 of the Illinois Mechanics Lien Act as to which Pope is the sole beneficiary.

### 3. RMS Cannot Succeed on the Merits of its Appeal of Count VI Because the Issues it Raises to Contest Pope's Statutory Lien Have Already Been Addressed or Are Frivolous

"Likelihood of success is not certainty of success; neither is it a mere possibility." *In re Doctors Hosp. of Hyde Park, Inc.*, 376 B.R. 242, 246 (Bankr. N.D. Ill. 2007). Appellants must "demonstrate a substantial showing of likelihood of success, not merely the possibility of success, because they must convince the reviewing court that the lower court, after having the benefit of evaluating the relevant evidence, has likely committed reversible error." *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997).

RMS is not likely to succeed—and indeed cannot succeed—because it has no claim.

Nor can it succeed on the numerous issues it argues are "clear reversible error." At the outset, it primarily argues that error was made in finding that Pope has a mechanics lien on the Account, without attempting to show that RMS has any right in the Account at all, either contractually or under the Mechanics Lien Act. It seeks to defeat Pope's rights without showing any rights of its own.

-15-

Each of RMS's "clear errors" have already been addressed or are frivolous. Therefore, RMS is not likely to succeed on the merits of its appeal.

In appealing the ruling on Pope's mechanics lien, RMS argues that it was reversible error to "interpret" Section 21.02 of the Illinois Mechanics Lien Act, 770 Ill. Comp. Stat. 60/21.02, because the statute is clear on its face and it was not explicitly found to be ambiguous. The relevant version of Section 21.02 during the period discussed in the Findings of Fact provided:

> Any owner, contractor, subcontractor, or supplier of any tier who requests or requires the execution and delivery of a waiver of mechanics lien by any person who furnishes labor, services, or materials for the improvement of a lot or a tract of land in exchange for payment or the promise of payment, shall hold in trust the unpaid sums subject to the waiver of mechanics lien, as trustee for the person who furnished the labor, services, or materials.

770 Ill. Comp. Stat. Ann. 60/21.02 (West 2001), *amended by* 770 Ill. Comp. Stat. Ann. 60/21.02 (West Supp. 2007). Specifically, RMS argues that the phrase "unpaid sums subject to the waiver of mechanics lien" is clear and that the Findings of Fact and Conclusions of Law After Trial on Count VI did not explicitly find that phrase ambiguous. This argument is frivolous. While it is true that the word "ambiguous" was not used in the Findings and Conclusions to describe Section 21.02, it is clear from the discussion there that Section 21.02 had to be interpreted. The opinion pointed out that the statute does not define "waiver of mechanics lien" and that Illinois state courts have at times been called upon to determine what that phrase means. *In re Raymond Prof'l Group, Inc.*, 408 B.R. 711, 734–35 (Bankr. N.D. Ill. 2009). Because Section 21.02 did not define that phrase, it was not error to follow state court interpretation of it.

Second, RMS argues that, if interpretation were permissible, it was error to interpret Section 21.02 in the manner set forth in the Findings and Conclusions on Count VI because that

-16-

interpretation was asserted to be inconsistent with the plain meaning of the state statute.

Specifically, RMS argues it was error to interpret the statutory text "unpaid sums subject to the

waiver of mechanics lien" as "monies not paid but claimed to be due when the 'owner,

contractor, subcontractor, or supplier of any tier who requests or requires the execution and

delivery of a waiver of lien . . . in exchange for payment or promise of payment.'" *See Raymond

Prof'l Group*, 408 B.R. at 735 (quoting Illinois Construction Law Manual § 13:46 (2007–2008

ed.)). This interpretation is not inconsistent with the plain meaning of the statute. "Monies not

paid" is just another way of saying "unpaid sums." The sums "subject to the waiver of mechanics

lien" are those that are "claimed to be due" when an owner or other party requests a lien waiver.

It was specifically found and held that (1) when Pope provided the January 30, 2003 Final Lien

Waiver, it had not been paid approximately $3.2 million, (2) AES, the owner of the Project, had

notice of that amount since at least March 2001, and (3) that entire sum was "subject to" delivery

of the Final Lien Waiver. *Raymond Prof'l Group*, 408 B.R. at 734–38, *amended by* 410 B.R.

813, 813–16 (Bankr. N.D. Ill. 2009). RMS also argues that because AES deposited only $2.5

million pursuant to its settlement with RMS, only that amount could have been held in trust

under Section 21.02. Pope was owed approximately $3.2 million dollars. That entire amount was

subject to the waiver of mechanics lien, regardless of the amount that AES paid in settlement.

Therefore, RMS is not likely to succeed on this issue.

Third, RMS argues that it was clear error to rely on extrinsic evidence when interpreting

the January 30, 2003 Final Lien Waiver. Specifically, RMS argues that it was error to find that

any more than $10 was subject to Pope's lien waiver because the lien waiver specifically stated

that it was given "for and in consideration of Ten Dollars ($10.00) Dollars [*sic*]." This argument

-17-

demonstrates the perils of selective quotation. RMS neglects the full text of the lien waiver,

which reports that it was given "for and in consideration of Ten Dollars ($10.00) Dollars [*sic*],

*and other good and valuable consideration*" (emphasis supplied). It was necessary to determine

the amount of the other consideration, which required consultation of sources other than the Lien

Waiver itself. Moreover, RMS and RPG raised this same issue in their post-trial argument on

Count VI, and it was dealt with extensively in the Findings and Conclusions on Count VI. *See*

*Raymond Prof'l Group*, 408 B.R. at 736–38. For these reasons, RMS is not likely to succeed on

this issue.

Fourth, RMS argues that it was error to find that any statutory trust arose in favor of Pope

under Section 21.02 of the Mechanics Lien Act because Pope had withdrawn a notice of

mechanics lien. RMS and RPG asserted this same argument after trial on Count VI, and it was

fully addressed in the Findings and Conclusions on Count VI. *See Raymond Prof'l Group*, 408

B.R. at 736. Specifically, it was found that the withdrawal "only returned the parties to their

respective positions as of the March 6, 2001 Sworn Contractors Affidavit." *Id.* (citing

*Contractors' Ready-Mix, Inc. v. Earl Given Constr. Co.*, 611 N.E.2d 529, 532 (Ill. App. Ct.

1993)). Now, as then, RMS does not provide any legal authority to support its position, and it is

unlikely that RMS will succeed on this issue on appeal.

### 4. RMS Cannot Succeed on the Merits of its Appeal of Counts II Through V Because the Arbitration Award Did Not "Transfer" Property Rights or Ownership Pre-Petition

RMS argues that it was error to find on Counts II through V that the Award did not

constitute a prebankruptcy transfer, but offered no supporting authority or proof in the record. Its

argument is clearly contrary to established law. As a matter of law, an arbitration award is a

-18-

factual finding and cannot itself transfer property interests. *See In re Raymond Prof'l Group, Inc.*, No. 07 A 00639, 2010 WL 2036371, at *7 (Bankr. N.D. Ill. May 20, 2010), and authorities cited. Furthermore, the Award itself only determined rights under the contract between RMS and Pope, and it did not purport to transfer property. Therefore, the Award in this case could not have been a prepetition transfer.

RMS also argues that the ruling in Count VI that RMS and Pope had once held the Account as tenants-in-common contradicts the later ruling that the Award was not a transfer. It does not contradict that ruling. *See id.* at *6–7 (explaining that any transfer of RMS's rights as tenant-in-common could not have occurred until (1) the Award was confirmed post-bankruptcy with the ruling in Adversary number 07-137 and (2) the ruling in Count VI determined that the Account was Pope's property ).

### 5. A Stay Would Harm Pope

RMS has no assertable debt due to it, no contractual claim to the money, and no lien claims against the fund. Because no assertable interest of RMS can be harmed absent a stay of the Judgments and because RMS is not likely to succeed on appeal, it is not necessary to determine whether a stay would harm Pope, or whether a stay is in the public interest. *See In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). Nevertheless, it is clear that Pope will be harmed if a stay is imposed. More than seven years have passed since AES deposited the $2.5 million settlement in the Account (now grown to $3.5 million), and it has been almost four years since the Arbitration Panel issued its Award determining that Pope is owed an amount larger than was contained in the Account, that RMS is entitled to recover nothing from the Account or from Pope, and that Pope is entitled contractually to be paid from the Account.

-19-

Now, RMS seeks to deny Pope the use of its money—deposited originally into an Account that

RPG wrongly and unjustifiably took into its debtor account and that is now protected in a new

account—for an additional undefined period during appeal. This is clearly harmful to the

business cash flow of Pope, whether or not the funds are currently earning interest.

### 6. No Property of Any Bankruptcy Estate Is Involved

In light of the foregoing, a final word is warranted as to any contention implied by RPG

and RMS that the Account money is property of the bankruptcy estate of either of them.

> Section 541 provides that the bankruptcy estate includes "all legal or
> equitable interests of the debtor in property as of the commencement of the
> case." The scope of § 541 is broad, and "every conceivable interest of the
> debtor, future, nonpossessory, contingent, speculative, and derivative" is
> within its reach. Although the question of whether an interest should be
> considered property of the estate is one of federal law, courts look to state
> law in determining "whether and to what extent the debtor has any legal or
> equitable interests in property as of the commencement of the case."
> Executory contracts and claims arising from contracts entered into before
> the filing of a bankruptcy petition are considered property of an estate.

*Paloian v. Grupo Serla S.A. de C.V.*, 433 B.R. 19, 35–36 (N.D. Ill. 2010) (internal citations

omitted).

As shown earlier, RPG had no contractual basis for dollar claims against Pope or the

Account, and its only argued "claim" is on the basis that the money might come into its control if

RMS were to win and the Debtors' estates are consolidated. That metaphysical possibility was

never warranted by the circumstances in the bankruptcy cases and cannot now be considered

assertable by conflicted lawyers who have already moved for but were denied consolidation. But

in any event, consolidation to sidestep an adjudicated claim by Pope against RMS can in no sense

be a "claim" by RPG of "estate property." The possibility of consolidation is not property of a

bankruptcy estate.

RMS entered bankruptcy with two possible contingent claims that were then property of

its estate. First, RMS was entitled to oppose confirmation of the Arbitration Award and to renew

its claims against the Account should confirmation of the Award be denied. It did so but lost. The

Award was confirmed by Judgment that was not appealed. Consequently, RMS lost any claim it

ever had to the Account funds, and also lost any claim that it is owed anything by reason of the

Pope-RMS contract and work performed by it. Second, RMS had a contingent claim that it might

have its own Mechanics Lien Act trust rights in the Account funds. However, as shown above, no

debt is due to RMS, so RMS cannot assert any mechanics lien trust rights.

Therefore, it cannot be argued that either RPG or RMS stand to have their interests in any

property of the bankruptcy estates damaged if no stay is issued.

## CONCLUSION

Because no assertable interests of RPG and RMS can be irreparably harmed absent a stay

of the Judgments and because they are not at all likely to succeed on the merits of their appeals,

the Motion for a Stay Pending Appeal will be denied by separate order. For the same reasons,

Pope's Motion for Turnover of Bank Account will be granted by separate order. Both orders will

be stayed at least two weeks to permit any application for a stay that might be made to the

District Court Judge who presides over the appeals to be made before Pope is allowed to take the

Account funds.

RPG and RMS have filed an alternative motion to stay the effect of any denial of the Stay

Motion until the District Court rules on the issue [Docket No. 617]. Under the circumstances, the

procedure under Rule 8005 Fed. R. Bankr P. is all that is necessary or appropriate, particularly

since the order denying the stay sought under that Rule is itself stayed to permit District Judge

review.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 29th day of September, 2010.

-22-